# IN THE COURT OF APPEALS OF IOWA

No. 21-1058
Filed September 22, 2021

**IN THE INTEREST OF J.M.,**
**Minor Child,**

**D.M., Father,**
      Appellant.
_____

      Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block,

Associate Juvenile Judge.

      The father appeals the termination of his parental rights. **AFFIRMED.**

      Andrew C. Abbott of Abbott Law Office, P.C., Waterloo, for appellant father.

      Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee, State.

      Tammy L. Banning of Juvenile Public Defender's Office, attorney and

guardian ad litem for minor child.

      Considered by Tabor, P.J., and Greer and Badding, JJ.

**GREER, Judge.**

The father appeals the termination of his parental rights to his child, J.M., who was born in 2020.[1] The juvenile court terminated the rights of the father under Iowa Code section 232.116(1)(e) and (h) (2021). We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). While we generally review terminations using a three-step analysis, our review is guided by the issues actually raised by the parent on appeal. *See id.*

Here, like the State, we struggle to understand what the father means to challenge with his petition on appeal. Considering his headings and some of the legal buzzwords he uses, the father purports to challenge whether the statutory grounds for termination were met and if termination of his parental rights is in the child's best interests.[2] But the substance of the father's claims boils down to a request for more time to work toward reunification and an argument that the Iowa Department of Human Services (DHS) failed to make reasonable efforts to reunify the father and J.M. Giving him the benefit of the doubt, we address what we

---

[1] The mother's parental rights were also terminated; she does not appeal.

[2] The father says he is challenging these things, but he does not actually dispute any of the elements under section 232.116(1)(h). Instead, he "request[s] that the court enter an order for deferral of permanency in the matter" because "there is a reasonable likelihood the child could be returned to his care within the deferral period of time." Similarly, his best-interests argument focuses on what DHS failed to do once his paternity was established and what he would do with the opportunity if given "a deferral in permanency." He does not craft an argument that involves "the child's safety," "the best placement for furthering the long-term nurturing and growth of the child," or "the physical, mental, and emotional condition and needs of the child." *See* Iowa Code § 232.116(2). The "best interests of the child" is not a nebulous concept that parents can use as the basis for a catch-all argument. *See P.L.,* 778 N.W.2d at 37 ("[T]he court is required to use the best-interest framework established in section 232.116(2) when it decides what is in the best interest of the child"—not some "unstructured best-interest test.").

understand to be the substance of the father's claims. *See In re N.M.*, No. 20-0882, 2020 WL 5651602, at *1 n.2 (Iowa Ct. App. Sept. 23, 2020) (expressing "uncertainty as to the issues presented" but "giving [the attorney] the benefit of the doubt when determining the issues presented").

The court can delay permanency and give the parent more time to work toward reunification. *See* Iowa Code §§ 232.104(2)(b), .117(5). But to do so, the court must determine "that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b). We cannot find the father could take over caring for J.M. if given six more months. At the time of the termination hearing in late June 2021, the father was in jail on a pending criminal charge for second-degree theft. How the charge would be resolved was still unclear, and the father had "no idea what date [he was] going to be released from jail." If he took a plea deal that included spending time at a residential facility—as the father seemed to hope was an option—the father would be unable to have J.M. live with him there. Additionally, at the time of his arrest on April 9, 2021, the father was actively addicted to methamphetamine. He testified he last used on the date of his arrest and was regularly using methamphetamine two to three times per week at that point. Even if the father's legal troubles were quickly resolved in his favor, six months is not enough time for the father to begin and complete substance-abuse treatment and then establish that he can maintain a sober lifestyle outside of a facility. We agree with the juvenile court that a delay in permanency is not warranted here.

The father also challenges whether DHS made reasonable efforts at reuniting him with J.M. after his paternity was established.[3] But paternity was officially established on February 10, 2021, and the termination hearing was not until June 24, 2021—more than four months later. The father did not raise the issue of reasonable efforts to the juvenile court before the June 24 termination hearing. And "we will not review a reasonable efforts claim unless it is raised prior to the termination hearing." *In re T.S.*, 868 N.W.2d 425, 442 (Iowa 2015). We do not consider this claim further.

We affirm the termination of the father's parental rights.

**AFFIRMED.**

---

[3] Even before paternity was established, and then also after, DHS offered opportunities to the father to participate in services.